UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Deborah Hays,<br>　　　　Plaintiff, | Civil No. 11-2477 (JRT/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| CitiMortgage, Inc. et al,<br>　　　　Defendants, | |
| and | |
| Safeguard Properties, LLC,<br>　　　　Cross Claimant<br>v. | |
| CitiMortgage, Inc.<br>　　　　Cross Defendant | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant CitiMortgage's Motion to Dismiss.[1]  The motion has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.   For the reasons outlined below, the Court recommends that Defendants' motion be granted in part and denied in part.

## I.    BACKGROUND

This suit arises out of Defendants CitiMortgage, Inc. (CitiMortgage) and Safeguard Properties, LLC (Safeguard) alleged unlawful changing of locks after CitiMortgage foreclosed on Plaintiff's property.  Plaintiff alleges each of the following claims against both CitiMortgage and Safeguard: 1) trespass; 2) conversion; 3) negligence per se; 4) negligence; 5) intentional infliction of emotional distress; and 6) invasion of privacy.  (Compl. [Docket No.1] ¶¶ 22-79).

---

[1] This case is within the Court's diversity jurisdiction, and therefore, under the Erie doctrine, the Court looks to Minnesota state substantive law in deciding the motions to dismiss.

Plaintiff is a fifty-six-year-old woman, who resided with her husband at 402 South Rum River Drive, Princeton, Minnesota. (Id. ¶ 6). Although the mortgage listed only Plaintiff's husband, the deed to the home included both of their names. (Id.) As of December 24, 2009, Plaintiff and her husband no longer lived together; however, Plaintiff remained in the home. (Id. ¶ 7). In January of 2010, Plaintiff failed to make her monthly payment. (Id. ¶ 8). In late April of 2010, she received a Notice of Mortgage Foreclosure. (Compl. [Docket No. 1], Ex. 1, at 1). It informed her that the property would be sold on July 1, 2010 at 10:00 a.m. and that she would have to vacate the property on or before January 3, 2011 unless the property was redeemed. (Id. at 1-2).

The property was sold at the sheriff's sale as planned on July 1, 2010, but Plaintiff alleges that she continued to live at the property. (Compl. ¶¶ 10-11). During part of the time, Plaintiff was "away attempting to secure employment two hours away from the home" and had asked a friend to "keep an eye on the house." (Id. ¶ 11). While Plaintiff was away, she received an email from her friend informing her that someone (later found to be Safeguard) had "placed stickers around her home and placed a lockbox on her home's back door." (Id. ¶ 12). Plaintiff alleges that "Safeguard's employees removed the back door's locks to install the lockbox but did not replace the locks or secure the door." (Id. ¶ 13). When Plaintiff returned to her home, she discovered that "numerous belongings were missing from inside the house due to the unsecured back door." (Id. ¶ 16). Because Plaintiff feared for her safety without a locking back door, she alleges that she did not continue to live in the home. (Id. ¶ 16).[2]

After Plaintiff's attorney contacted Safeguard and CitiMortgage, CitiMortgage ordered Safeguard to "change the locks and give [Plaintiff] the only key." (Id. ¶ 18). Plaintiff alleges

---

[2] During the time that she was gone, Plaintiff began to pack-up and move her belongings; however, Plaintiff alleges that additional items continued to disappear. (Id. ¶ 17).

that she has filed an official police report for the missing property, which to date she estimates to

be valued at $11,883.00 and includes several sentimental items, such as her "great-grandmothers

and grandmothers heirloom engagement and wedding rings." (Id. ¶ 20). Additionally, she

alleges that the stress has caused her pre-existing fibromyalgia pain to increase resulting in

"extreme physical pain" and an impeded ability to function normally. (Id. ¶ 21).

## II.    DEFENDANT'S MOTION TO DISMISS

### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on

the pleadings, a party has failed to state a claim upon which relief may be granted. On a motion

to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all

reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388

F.3d 591, 593 (8th Cir. 2004). Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." This

requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must "plead[ ] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 120 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted).

Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative

level." Id. Courts must undertake the "context-specific task" of determining whether the

plaintiff's allegations "nudge" her claims against each defendant "across the line from conceivable to plausible." Iqbal, 120 S.Ct. at 1950-51 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham St. Fin., Inc. v. Pump Media, Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668 at *3 (D. Minn. Dec. 8,2009) (citing Iqbal, 129 S.Ct. at 1949).

Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). When analyzing a complaint on a 12(b)(6) motion to dismiss, courts should read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### 2. Plaintiff's Trespass Claim

A claim for trespass requires proof on two essential elements: 1) that the plaintiff had a right of possession at the time of entry; and 2) an unlawful entry upon the plaintiff's possession. Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc., 624 N.W.2d 796, 805 (Minn. Ct. App. 2001). Defendant does not dispute, and appropriately acknowledges that for purposes of this motion the Court must accept as true, Plaintiff's allegation that she had a right of possession in the property at the time of entry and that Defendant ordered its alleged agent (Safeguard) to enter Plaintiff's property. (Mem. of Law in Supp. of Def. CitiMortgage, Inc.'s Mot. to Dismiss [Docket No. 13] at 13). Rather, Defendant CitiMortgage argues that the trespass claim against it

fails because "Plaintiff has not alleged that she was damaged in any way by Safeguard's trespass onto her land."  (Id.)  Though CitiMortgage acknowledges that Plaintiff may have suffered loss to her personal property and emotional damages, it asserts that Plaintiff has not "alleged that the Property was damaged in any way as a result of Safeguard's entry onto the Property."  (Id.) Defendant cites no authority whatsoever for the proposition that trespass is actionable only upon a showing of damage to the real property itself, and the Court finds that Defendant's position is unfounded in the law.

Minnesota has long recognized that the scope of recoverable damages based on a trespass claim extends beyond mere actual damage to the land.  See Whittaker v. Stangvick, 111 N.W. 295, 296 (Minn. 1907) (explaining that in a trespass action where "there is a direct invasion of another's person or property without permission, which is actionable per se, or which gives rise to a presumption of at least some damage," there need not be "proof of any actual damage.") ("[s]o a man shall have an action against another for driving over his ground, though it do him no damage; for it is an invasion of his property, and the other has no right to come there."); Sime v. Jensen, 7 N.W.2d 325, 328 (Minn. 1942) ("[w]here there has been a trespass on realty, the owner is entitled to recover such damages as he may have sustained even though they are nominal in amount."); Lake Mille Lacs Invest., Inc. v. Payne, 401 N.W.2d 387, 391 (Minn. Ct. App. 1987) (citing, with approval, Wisconsin law that holds a person is entitled to nominal damages based upon a trespass even where no actual damage to the land has been done); see also Restatement (Second) of Torts § 163 ("[o]ne who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.").

Defendant's argument that one may trespass upon another's property so long as no physical damage is done to the property is contrary to existing state trespass law. For these reasons, the Court finds that Defendant's motion to dismiss Plaintiff's claim for trespass should be denied.

### 3.   Plaintiff's Conversion Claim

The Complaint alleges that Plaintiff possessed and held full legal title to her home at the time of Defendants' entry and that Plaintiff retained actual or constructive possession of any chattel located in her home. (Compl. ¶ 39). Plaintiff also alleges that Defendant "CitiMorgage, its agents, contractors and/or employees wrongfully exerted control over the Plaintiff's property in denial of her possessory rights when they removed and disposed of her various possessions." (Id. ¶ 42).

Conversion requires the following two elements: "(1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994). It is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotation marks omitted). The Minnesota Supreme Court has adopted the following rule with respect to the requisite intent:

> The intention necessary to subject to liability one who deprives another of the possession of his chattel is merely the intention to deal with the chattel so that such dispossession results. It is not necessary that the actor intend to commit what he knows to be a trespass or a conversion. It is, however, necessary that his act be one which he knows to be destructive of any outstanding possessory right, if such there be.

Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 586 (Minn. 2003) (quoting

Restatement (Second) of Torts § 222 cmt. c (1965)).[3]

Defendant CitiMortgage argues that this claim against it fails even if "Safeguard

actually removed her chattel from the Property, [because] CitiMortgage is not liable for

the unauthorized intentional torts of its agents."  (Id. at 11) (citing Semrad v. Edina

Realty, Inc., 493 N.W.2d 528, 535 (Minn. 1992)).[4]  The Court disagrees.

In Semrad, citing Kasner v. Gage, 161 N.W.2d 40 (1968), the Minnesota Supreme

Court reaffirmed its holding that generally, "a principal is not liable for the unauthorized

intentional tort of its agent."  493 N.W.2d at 535.  However, the Court's language did not

seek to establish any new holding, and made it clear that the unauthorized intentional tort

in Kasner did not invoke liability because it was "neither authorized nor incidental to

authorized conduct and, therefore, was not within the scope of the agency."  Id.  Even in

Kasner, the Court noted the general rule that "[t]here can be no liability without a

supported finding that the act was within the scope of the agency or employment in the

sense that it is conduct of the same general nature as that authorized, or incidental to the

conduct authorized.  161 N.W.2d at 42.  The Court, in Kasner, however, held that "the

---

[3] Though the Complaint on its face does not make a claim for conversion of Plaintiff's physical home, to the extent that Plaintiff makes such an argument, the Court recommends dismissing such a claim.  (See Pl.'s Mem. in Opp'n to Def. CitiMortgage, Inc.'s Mot. to Dismiss [Docket No. 20] at 17) (arguing that Plaintiff had an interest in her home and that Defendant "deprived her of her property interest in the home).  As Minnesota law makes clear, conversion is "an act of willful interference with **personal property**, done without lawful justification by which any person entitled thereto is deprived of use and possession."  DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotation marks omitted).  Generally, a conversion claim cannot lie for the deprivation of a building unless it has been severed from the real estate.  See id; Denke v. Mamola, 437 N.W.2d 205, 207-08 (S.D. 1989) (citing 18 Am.Jur.2d Conversion §§19, 22 at 156 (1985)) ("[t]he general rule is that an action for conversion lies only with respect to personal property and real estate is not subject to conversion.").

[4] Defendant CitiMortgage also argues that it never had the intent to deprive Plaintiff of her personal property. (Mem. of Law in Supp. of Def. CitiMortgage, Inc's Mot. to Dismiss at 10-11).  It asserts that "Plaintiff does not allege that CitiMortgage exercised dominion or control over her personal belongings, or that it did so with the intent to deprive her of the possession of her chattel."  (Id. at 11).  However, as described below, even if CitiMortgage itself did not have the intent, as the alleged principal, it can nevertheless be held liable for Defendant Safeguard's actions.

conduct of the actors in [that] case was not within the scope of employment or agency relationship with [the defendant]." Id. at 43.

Indeed, in Semrad, the Court did not appear to deviate at all from the general rule espoused in Kasner that "a principal is liable for the act of an agent committed in the course and within the scope of the agency and not for a purpose personal to the agent." 493 N.W.2d at 535. Therefore, this Court finds that the Minnesota Supreme Court has never established a per se rule that a principal can never be held liable for any intentional tort of its agents if the principal had not explicitly authorized the agent's actions. To the contrary, the Minnesota Supreme Court has held that a principal may be held liable for an intentional tort committed by an agent if the tort was done within the scope of their agency. See Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 404-05 (Minn. 1973).

In Lange, a cookie salesman "viciously assaulted" a store manager of a grocery store and threw merchandise around the store after an argument had developed between the two regarding the product placement of the salesman's cookies. Id. at 401. The Court explained that "[r]espondeat superior or vicarious liability is a principle whereby responsibility is imposed on the master who is not directly at fault" under public policy reasoning that seeks "to satisfy an instinctive sense of justice." Id. at 403. The two-fold reasoning for holding the principal liable is that he is in a better position to "insure[] against such contingencies" and "knowing that he is responsible, will be alert to prevent the occurrence of such injuries." Id. In finding that the employer was liable for the assault, the Court held, as a matter of law, that "under the facts of this case . . . the employee was acting within the scope of employment at the time of the aggression." Id. at 404. In concluding, the Court stated that "[t]o the extent that our former decisions are

inconsistent with the rule now adopted, they are overruled." <u>Id.</u> at 405.  Thus, to the extent that any prior decision held that a principal could never be held liable for the intentional torts of its agents, it was overruled.

Subsequently, in <u>Hagen v. Burmeister & Assocs., Inc.</u>, 633 N.W.2d 497, 504 (Minn. 2001), the Minnesota Supreme Court explained that the "scope-of-employment test as clarified in <u>Lange</u>" should be followed and further elaborated on the test to be employed: "an employer is vicariously liable for an employee's intentional tortious acts when: (1) the tort is related to the employee's duties; and (2) the tort occurs within work-related limits of time and place."  Furthermore, the Court reaffirmed that "it is a question of fact whether the employee's acts were foreseeable, related to, and connected with acts otherwise within the scope of his employment." <u>Hagen</u>, 633 N.W.2d at 504 (quoting <u>Fahrendorff v. North Homes, Inc.</u>, 597 N.W.2d 905, 910 (Minn. 1999)).

Therefore, despite Defendant's argument, under Minnesota law, a principal may be held liable for the intentional tort of its agent, even if unauthorized, so long as done within the scope of the agency.  <u>See id.</u>; <u>Spannaus v. Mecca Enters., Inc.</u>, 262 N.W.2d 152, 153-55 (Minn. 1977); <u>Lange</u>, 211 N.W.2d at 404-05.  Because Plaintiff has alleged that her property was removed by Safeguard, CitiMortgage's alleged agent, (<u>see</u> Compl. ¶ 42), and because further discovery must be made to determine whether such removal was within the scope of Safeguard's agency relationship with CitiMortgage, the Court finds that Plaintiff's claim for conversion of her personal property should not be dismissed.

### 4.  Plaintiff's Negligence Per Se Claim

Plaintiff's Complaint alleges that Defendants violated the "explicit redemption period requirements set forth in Minn. Stat. § 580.23 (2010) . . . when they, their agents, contractors,

and/or employees, wrongfully entered into Plaintiff's home, changed her locks, left her home unsecure, and removed her possessions." (Compl. ¶¶ 55-56).

"Negligence per se is a form of ordinary negligence that results from violation of a statute," Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981), which "substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute is conclusive evidence of duty and breach." Gradjelick v. Hance, 646 N.W.2d 225, 231 n.3 (Minn. 2002). However, under Minnesota law, for a statute to establish a standard of care, its purpose must be:

> a) to protect a class of persons which includes the one whose interest is invaded;
> b) to protect the particular interest which is invaded; c) to protect that interest
> against the kind of harm which has resulted; and d) to protect that interest against
> the particular hazard from which the harm results.

Scott v. Indep. Sch. Dist. 709, Duluth, 256 N.W.2d 485, 488 (Minn. 1977). In other words, "the well-established principle [is] that violation of a statute does not constitute negligence per se unless the victim of the harm was intended to be protected by the statute and unless the harm suffered is of the kind intended to be prevented by the statute." Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 662-63 (Minn. 2004).

Defendant CitiMortgage argues that § 580.23 "was not enacted to protect a mortgagor from trespass; rather, the statute was meant to provide the mortgagor with the opportunity to retain their real property." (Mem. of Law in Supp. of Def. CitiMortgage, Inc's Mot. to Dismiss [Docket No. 13] at 5). It further argues that "[t]he legislature did not intend to protect mortgagors from the loss of their personal property when it enacted § 580.23." (Reply in Supp. of Def. CitiMortgage, Inc.'s Mot. to Dismiss [Docket No. 22] at 3). The Court agrees. The Court finds that although Plaintiff falls within the class of persons the statute envisioned, the

statute was not intended to protect the particular interest which was invaded; namely, the interference with the personal property of a mortgagor.

The statute, on its face, does not impose any duty upon the mortgagee; rather, it affords a mortgagor the remedy of redeeming his or her property if it is sold pursuant to a foreclosure by advertisement.  The legislative history of Minn. Stat. § 580.23 provides the general object of the statute as being "calculated to save the property of debtors from being sacrificed and to enable debtors to retain their property, or, if they shall fail to do so, then to secure its application, so far as may be, to the payment of the demands of the creditors."  Revised Laws of Minnesota, ch. 83 § 4480 cmt. 3 (1905).

The language of the statute and the legislative history demonstrate that the primary class of persons it sought to protect was the homeowner or mortgagor.  See Boehm's Inc. v. Wachholz, 495 N.W.2d 447, 450 (Minn. Ct. App. 1993) ("[t]he purpose [of the right to redemption] is to enable all who have interests or claims in the property which may be cut off to save those interests or claims, insofar as this may be done without impairing the rights of those in whose behalf the sale was made.") (quoting Law v. Citizens' Bank of Northfield, 89 N.W. 320, 322 (Minn. 1902)).  This general purpose of redemption has been affirmed in other jurisdictions as well.  See Farm Credit Bank of Wichita v. Zerr, 915 P.2d 137, 140 (Kan. App. 1996) (explaining that "[t]he statutory right of redemption is a judgment debtor's privilege to regain property lost by sale under process by permitting purchase at the price at which the property was sold."); Chase Manhattan Bank v. Candelaria, 90 P.3d 985, 987 (N.M. 2004) ("[o]ne of the purposes of the redemption statute is to give the **property owner**, or certain others listed under the redemption statute, a reasonable opportunity to redeem the property.").  Defendant CitiMortgage does not dispute that the statute aims to protect the mortgagor and, though not

explicitly, appears to acknowledge that the statute was meant to protect the mortgagor. (See Mem. of Law in Supp. of Def. CitiMortgage, Inc's Mot. to Dismiss at 5) ("Section 580.23 was not enacted to **protect a mortgagor** from trespass; rather, the statute was meant to **provide the mortgagor** with the opportunity to retain their real property.") (emphasis added). For these reasons, the Court finds that Plaintiff, as a homeowner and mortgagor, has an interest and claim in the property and, as such, is within the class the statute sought to cover.

Notwithstanding that the statute applies to the mortgagor, the statute does not on its face seek to protect the mortgagor against interference with his or her personal property—even if located within the home. Despite Plaintiff's argument that "[t]he legislature enacted this statutory redemption period to protect the possessory rights of homeowners and sought to prevent the type of harm suffered by Plaintiff—invasion of her property rights," (Pl.'s Mem. in Opp'n to Def. CitiMortgage, Inc.'s Mot. to Dismiss at 7), as already discussed above, the primary object of the right of redemption afforded under Minn. Stat. § 580.23 is to allow the mortgagor to save, regain, or retain the property, which, of course, refers to the mortgagor's real property. Redemption annuls the foreclosure sale. See Minn. Stat. § 580.27. Nothing within the language of the statute or the statute's legislative history denotes that it seeks to protect the personal property located within the person's realty during the redemption period, nor does it seek to establish a level of care that must be employed by the mortgagee during the redemption period. Plaintiff fails to provide any cases holding that this statute—Minn. Stat. § 580.23—seeks to protect this type of harm. The more apparent harm that the statute sought to prevent is a mortgagor's loss of their interest in the home itself. Other causes of action exist to protect a homeowner's personal property located within the home during the redemption period and nothing in the statute appears to transform the removal of personal property from the home of a

person in a redemption period into negligence per se, compared to an entry of the home of a person not within a redemption period.[5]

In the present case, Plaintiff does not allege that Defendant CitiMortgage interfered with Plaintiff's ability to redeem the real property in any way—Plaintiff merely alleges that Defendant CitiMortgage's actions resulted in the removal of her personal possessions.  However, the statute, does not impose any statutory duty upon a mortgagee to protect the personal property of a mortgagor, nor does it provide any relief for the interference with a mortgagor's personal property.  For these reasons, the Court finds that Plaintiff's claim of negligence per se should be dismissed.

### 5.  Plaintiff's Negligence Claim

Plaintiff alleged in her Complaint that "Defendants owed a duty to the Plaintiff to act as a reasonably prudent lender during any foreclosure proceedings" and once they were allegedly on notice "that they had trespassed on the Plaintiff's property, the Defendants had a duty of reasonable care to investigate and correct any potential wrongful actions/foreclosure."  (Compl. ¶¶ 59-61).  Plaintiff alleges that Defendant CitiMortgage breached that duty "when they, their agents, contractors, and/or employees, wrongfully entered into the Plaintiff's home, changed her locks, left her home unsecure, and removed her possessions."  (Compl. ¶ 62).

Defendant CitiMortgage argues that Plaintiff's negligence claim fails because "she has not alleged a duty that CitiMortgage owed to her."  (Mem. of Law in Supp. of Def.

---

[5] Plaintiff also argues that when Minn. Stat. § 580.23 is read in conjunction with Minn. Stat. §582.031, which provides only a limited right of entry during the redemption period, "it becomes clear that the legislature intended to protect homeowners from invasion of their possessory rights during the redemption period."  (Pl.'s Mem. in Opp'n to Def. CitiMortgage, Inc.'s Mot. to Dismiss at 7).  Though Minn. Stat. § 582.031 may provide only a limited right of entry for a mortgagee to prevent waste, Plaintiff does not bring her negligence per se claim under Minn. Stat. § 582.031, but rather under Minn. Stat. § 580.23.  (Compl. ¶ 55).  Minn. Stat. § 582.031 involves different rights and obligations, separate and distinct from Minn. Stat. § 580.23, and it does not bolster Plaintiff's argument that the statute upon which Plaintiff brings this negligence per se claim—Minn. Stat. § 580.23—seeks to protect the type of harm Plaintiff suffered in this case: the removal of her personal property.

CitiMortgage, Inc's Mot. to Dismiss at 3).  It asserts that "[t]he fact that the Property was allegedly left unsecure was not foreseeable by CitiMortgage," and even if any duty existed, "CitiMortgage acted as a reasonably prudent lender . . . when it allegedly ordered Safeguard to secure the unoccupied Property."  (Id. at 4).  Based on the facts alleged in the Complaint, the Court disagrees.

Minnesota law provides that in general, "a principal is liable for the acts of an agent committed in the course and within the scope of the agency and not for a purpose personal to the agent."  Semrad, 493 N.W.2d at 535.  Furthermore, the general rule in Minnesota is that "a principal is bound not only by the agent's actual authority but also by that which the principal has apparently delegated to him."  McGee v. Breezy Point Estates, 166 N.W.2d 81, 89 (Minn. 1969).  "[T]he scope of apparent authority is determined not only by what the principal knows and acquiesces in, but also by what the principal should, in the exercise of ordinry [sic] care and prudence, know his agent is doing."  Id.  Thus, "if a principal acts or conducts his business, either intentionally or through negligence, . . . the principal is bound by the acts of the agent within the scope of his apparent authority as to persons who have reasonable grounds to believe that the agent has such authority and in good faith deal with him."  Id.; see also Langan v. Nathanson, 201 N.W. 927, 928 (Minn. 1925) ("the test of the master's liability is whether there was authority, express or implied, for doing the act; that is, was it one done in the course and within the scope of the servant's employment? If it be done in the course of and within the scope of the employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance.") (internal quotation marks omitted); Meyers v. Tri-State Automobile Co., 140 N.W. 184, 184 (Minn. 1913) (rejecting an argument that defendant was not liable to the plaintiff for the negligence of a driver who was the defendant's agent and explaining

that "[t]he general rule in tort actions is that: [t]he principal is liable for the acts and negligence of the agent in the course of his employment . . . [s]o long as he stands in the relation of principal or master to the wrongdoer, the owner is responsible for his acts.") (internal quotation marks omitted); <u>Venne v. Midwest Family Mut. Ins. Co.</u>, 1992 WL 77549, at *1 (Minn. Ct. App. Apr. 21, 1992) (unpublished) ("The principal will be liable even for an agent's negligent acts."); Restatement (Second) of Agency § 244 cmt. a (1958) (stating that a master is subject to liability for trespass or conversion if done within the scope of employment, even though it may result from negligence).

In this case, Plaintiff has alleged that Safeguard, as CitiMortgage's alleged agent, "removed the back door's locks to install the lockbox but did not replace the locks or secure the door," which also "meant that anyone could enter the home by just pushing the backdoor open." (Compl. ¶ 13). Because Plaintiff alleges that Safeguard was the agent of CitiMortgage, CitiMortgage may be held liable for any negligent conduct done by Safeguard.

"To state a plausible claim of negligence under Minnesota law, a plaintiff must plead sufficient factual content regarding four essential elements: (1) the existence of a duty of care; (2) breach of that duty; (3) that an injury was sustained; and (4) that the breach of duty was the proximate cause of the injury." <u>Cummings v. Paramount Partners, LP</u>, 715 F. Supp.2d 880, 914-15 (D. Minn. 2010). "The common-law test of duty is the probability or foreseeability of injury to plaintiff." <u>Austin v. Metropolitan Life Ins. Co</u>, 152 N.W.2d 136, 138 (Minn. 1967) (citing <u>Palsgraf v. Long Island R. Co.</u>, 162 N.E. 99, 100 (N.Y. 1928)). Additionally, "[i]f the injury is foreseeable, the duty owed to the plaintiff is one of ordinary care." <u>Moorhead Econ. Dev. Auth. v. Anda</u>, 789 N.W.2d 860, 888 (Minn. 2010).

The determination of foreseeability, in regard to determining the duty owed, is a question for the court.  See Domagala v. Rolland, 805 N.W.2d 14, 27 (Minn. 2011) ("Foreseeability of injury is a threshold issue related to duty that is ordinarily properly decided by the court prior to submitting the case to the jury.").  "To determine whether an injury was foreseeable, we look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury."  Id.  "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether the possibility of an accident was clear to the person of ordinary prudence."  Id.  (internal quotation marks omitted).[6]

On the facts alleged—that Safeguard removed the locks to Plaintiff's home and left the home unsecured—it is objectively reasonable to expect that people may come to take Plaintiff's personal property from the home.  At this stage of the litigation, the Court finds that Plaintiff's Complaint "contains sufficient factual allegations to support a reasonable inference that . . . Defendants owed Plaintiff[] a legal duty."  Cummings, 715 F. Supp.2d at 915.  Additionally, the Court finds that there is sufficient factual content to support an inference that Safeguard breached its duty by not replacing the locks or securing the door, that Plaintiff suffered an injury when her personal property was removed, and that Plaintiff's injury was caused by Safeguard's breach.  Id.

For these reasons, the Court find that Defendant CitiMortgage's motion to dismiss Plaintiff's negligence claim should be denied.

### 6.  Plaintiff's Intentional Infliction of Emotional Distress Claim

In support of her intentional infliction of emotional distress claim, Plaintiff alleges that "CitiMortgage, its agents, contractors, and/or employees, wrongfully and without permission or

---

[6] CitiMortgage argues that it could not have reasonably foreseen Safeguard removing locks and leaving Plaintiff's backdoor unsecure by not replacing the locks.  CitiMortgage misses the point however.  Since the liability to CitiMortgage in the present case would lie in its vicarious liability as principal for the negligent acts of its agent, Safeguard, the foreseeability inquiry concerning the Court's determination of the question of duty is conducted from the perspective of Safeguard's conduct not CitiMortgage's.

legal authorization entered onto the Plaintiff's property, entered her home, seized her home, left her home unsecure, converted her numerous personal belongings, and delayed offering any assistance to the Plaintiff upon obtaining notice of this wrongful conduct."  (Comp. ¶ 65).  She asserts that this was done intentionally or with a reckless disregard for the Plaintiff's possessory rights and that it caused "severe emotional distress upon the Plaintiff, exacerbating her previously existing fibromyalgia and causing intense physical pain that significantly affected her ability to function."  (Id. ¶¶ 66-67).

A claim for intentional infliction of emotional distress requires a showing of the following elements: 1) the conduct must be extreme and outrageous; 2) the conduct must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be severe. Hubbard v. United Press Int'l, 330 N.W.2d 428, 438-39 (Minn. 1983).  Such claims are subject to a "high threshold standard of proof" before they may be submitted to the jury, and "[t]he operation of this tort is sharply limited to cases involving particularly egregious facts."  Id. at 439.  In light of Minnesota's policy on the availability of damages for mental distress, the Minnesota Supreme Court reaffirmed "the limited scope of this cause of action."  Id.  The Court finds that, based upon the pleadings in her Complaint, Plaintiff cannot meet the necessary threshold to survive a motion to dismiss with respect to the first and fourth elements.

In regard to the fourth element, the Minnesota Supreme Court explained that "a complainant must sustain a similarly heavy burden of production in his allegations regarding the severity of his mental distress."  Id.  It further stated that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  Id. (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  In determining the severity of distress, courts "may look to 'the intensity and duration of the distress.'"  Cafferty v. Garcia's of

Scottsdale, Inc., 375 N.W.2d 850, 853 (Minn. Ct. App. 1985) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  Plaintiff argues that whether she suffered severe emotional distress is a question of fact for the jury; however, as the court in Cafferty explained, "it is for the court to determine whether on the evidence severe emotional distress **can be found**; it is for the jury to determine whether, on the evidence, it has in fact existed."  Id. (quoting Restatement (Second) of Torts § 46 cmt. j (1965)) (emphasis added).  It is the Court's "obligation to determine whether the evidence offered to prove severe distress is sufficient to allow the claim to go to the jury." Id.  The Court finds that in this case it is not.

Plaintiff first asserts that because of Defendants' conduct, "[s]he has experienced stress from this incident to the point that it has exacerbated her fibromyalgia, resulting in extreme physical pain and diminished ability to function."  (Pl.'s Mem. in Opp'n to Defendant CitiMortgage, Inc.'s Mot. to Dismiss at 16).  However, "there is 'no liability where the plaintiff has suffered exaggerated or unreasonable emotional distress unless it results from a peculiar susceptibility to such distress of which the actor had knowledge.'"  Cafferty, 375 N.W.2d at 853-54.  Plaintiff has not alleged in any way that Defendant CitiMortgage was aware of Plaintiff's peculiar susceptibility in light of her pre-existing fibromyalgia.  Therefore, even if Plaintiff's exacerbations of her fibromyalgia may be considered severe emotional distress, Defendant cannot be liable because Plaintiff has not alleged that Defendant had knowledge of Plaintiff's peculiar susceptibility.

Next, Plaintiff asserts that she suffered severe emotional distress when she was "mortified to learn that several items of personal property and family heirlooms were stolen." (Pl.'s Mem. in Opp'n to Defendant CitiMortgage, Inc.'s Mot. to Dismiss at 16).  Plaintiff provides no allegations regarding the intensity or duration of her shock regarding the removal of

her property, or how it has affected her everyday life in anyway.  Merely using a descriptive word such as "mortified"—without further detail—does little to demonstrate the severity of Plaintiff's discovery that some of her personal property was removed from the home. Unfortunately, theft is a common occurrence in every society, and though unpleasant and startling at times, which may cause any person to feel unnerved or some shock initially, it is not generally the stimulus for severe emotional distress under the "high threshold" established by Minnesota law.  Plaintiff fails to cite any cases which hold that the mere taking of personal property when Plaintiff was not personally present at the time of the taking is grounds for an intentional infliction of emotional distress claim.  Because the Court finds that the Plaintiff's shock as a result of the removal of some of Plaintiff's personal property in this case is something people commonly encounter and endure in life, "then the claim should not even be submitted to the jury." Cafferty, 375 N.W.2d at 853.

Finally, Plaintiff argues "[s]he feared for her life because her home was unsecured and her home was burglarized."  (Pl.'s Mem. in Opp'n to Defendant CitiMortgage, Inc.'s Mot. to Dismiss at 16).  Plaintiff asserts that because her back door was unsecured, she feared for her life and could not stay at her home.  (Compl. ¶ 16).  Plaintiff fails to provide any allegations regarding the intensity or duration of how, if at all, this affected her once Safeguard reinstalled the locks and gave her the only key.  (See Compl. ¶ 18).  Again, the Court finds that sometimes unforeseen events, intended or not, may cause an individual to leave the comfort of her home temporarily and find refuge in a friend's home or a hotel.  However, such occurrences, though they may be stressful and unpleasant, do not generally cause such severe emotional distress to satisfy the "high threshold" mandated under Minnesota law.  This is particularly true when, as in the present case, Plaintiff was aware of the reason why her back door was unlocked and was not

subjected to uncertainty or fear that someone was looking to harm her.  For these reasons, the Court finds that Plaintiff did not suffer severe distress.

Additionally, the Court finds that with respect to the first element, Defendants' conduct was not extreme and outrageous.  "[T]he type of actionable conduct referred to in the Restatement as 'extreme and outrageous' must be 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'"  Hubbard, 330 N.W.2d at 439 (quoting Haagenson v. Nat'l Farmers Union Prop. and Casualty Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979)).  Plaintiff alleges that Defendant CitiMortgage's alleged agents entered Plaintiff's home, seized her home, left her home unsecure, converted her numerous personal belongings, and "delayed offering any assistance to the Plaintiff upon obtaining notice of this wrongful conduct."  (Compl. ¶ 65).  Defendant's alleged conduct in this case does not "involve[e] particularly egregious facts."  Hubbard, 330 N.W.2d at 439.

As Plaintiff has admitted in her memorandum, Minn. Stat. § 582.031 provides the holder of a mortgage or sheriff's certificate, or his agents, a limited right of entry to prevent waste until the holder receives notice that the premises are occupied.  Though the issue of whether Defendants' actions complied with the statute are not presently before the Court, and the Court makes no determination whatsoever on the issue, the right granted by the statute is relevant to accessing the nature of Defendant CitiMortgage's conduct in this case.  The Complaint itself alleges that Plaintiff was away from the home for some period of time, such that she had entered into an informal agreement with a friend to "keep an eye on the house while she was away."  (Compl. ¶¶ 10-12).  Furthermore, there is no allegation that CitiMortgage improperly initiated and pursued the underlying foreclosure in anyway.  Thus, although Plaintiff may never have abandoned the home or allowed it to appear abandoned, because CitiMortgage appears to have

properly foreclosed and attempted to exercise its limited right of entry provided by Minn. Stat. §

582.031 when Plaintiff appeared not to be present at the home for some period of time, whether

done properly or not, CitiMortgage's conduct does not amount to extreme and outrageous

conduct.  See Bahr v. County of Martin, 771 F. Supp. 970, 978 (D. Minn. 1991) (finding that the

defendants actions in repossessing real and personal property did not amount to extreme and

outrageous conduct required for a claim of intentional infliction of emotional distress).

        In support of her argument, Plaintiff cites several federal district court decisions not

within the Eighth Circuit, finding extreme or outrageous conduct.  (Pl.'s Mem. in Opp'n to

Defendant CitiMortgage, Inc.'s Mot. to Dismiss at 14).  However, even if these decisions were

binding on this Court, they are all easily distinguishable.  See CitiFinancial Mortg. Co., Inc. v.

Frasure, No. 06-CV-160-TCK-PJC, 2008 WL 2199496, at *7 (N.D. Okla. 2008) ("[the

defendants] conduct involved repeatedly threatening foreclosure on a piece of property in which

they had no interest, even after being informed by [the plaintiffs] that they were in error.");

Jacobini v. J.P. Morgan Chase N.A., Case No. 6:11-cv-231-Orl-31GJK, slip op., at 7-9 (M.D.

Fla. August 1, 2011) (finding extreme and outrageous conduct when the lender had twice sent

agents to enter the plaintiff's home—even though no foreclosure proceedings had been initiated

at all—while the plaintiff was present in the home, resulting in 911 calls both times, and even

though the deputies had instructed the lender's agent to give the key to the plaintiff after the first

intrusion); Newman v. Bank of America N.A., No. CV10-556-CRP, slip op., at 15-18 (D. Ariz.

September 7, 2011) (finding extreme and outrageous conduct when for more than a year the

defendants "attempted to collect on a non-existent loan," placed collection calls to the plaintiffs,

force-placed hazard insurance on the property, and twice initiated foreclosure proceedings

against the plaintiffs even though the plaintiffs were constantly communicating with the

defendants informing them that the loan was paid in full and providing multiple pieces of evidence to show that it was paid in full).

Plaintiff's cited authority within this circuit is also easily distinguishable. See Emmke v. DeSilva, 293 F. 17, 20-21 (8th Cir. 1923) (finding that a court was justified in submitting plaintiffs case to the jury on plaintiff's intrusion claim when the defendant came into the plaintiff's hotel room, accused her of being a "common prostitute and used the foulest of language . . . concerning the immoral character and practices of her husband"); Bauer v. Ford Motor Credit Co., 149 F. Supp.2d 1106, 1108 (D. Minn. 2001) (finding that a reasonable person could decide that under an invasion of privacy claim, the defendants continued attempts to collect—including repeated calls to the plaintiffs, their neighbors, relatives, and employers—on a debt that the plaintiffs did not owe constituted "highly offensive conduct"); Shqeirat v. U.S. Airways Group, Inc., 515 F. Supp.2d 984, 1002 (D. Minn. 2007) (finding that a jury could find extreme and outrageous conduct when the defendants removed the plaintiffs from an airplane flight, arrested them, handcuffed them, held them in custody for forty-five minutes, required them to reboard the plane only to identify their carry-on luggage in front of other passengers, escorted them through the airport in handcuffs, and detained them for several hours before questioning and releasing them); Iacona v. Schrupp, 521 N.W.2d 70, 73 (Minn. Ct. App. 1994) (finding that a jury could find extreme and outrageous conduct when the defendant, seeking to help injured motorists, ran over one of the motorists, caused the other one to fall from his oil tanker onto the roadway, and then drove away from the scene even though "he knew that he had run over someone" and that another person was "clinging to his truck."); Wenigar v. Johnson, 712 N.W.2d 190, 198 (finding extreme and outrageous conduct when the defendant repeatedly shouted at the plaintiff at work, would not permit him to take any breaks, would call him names,

tease him and insult him while at work, and subjected the plaintiff to distressing living conditions).

For these reasons, the Court finds Plaintiff has failed to state a claim of intentional infliction of emotional distress and this claim should be dismissed.

### 7. Plaintiff's Invasion of Privacy Claim

Minnesota law permits an invasion of privacy to be based on: 1) an intrusion upon seclusion; 2) appropriation; and 3) publication of private facts. See Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 235 (Minn. 1998) (recognizing the "torts of intrusion upon seclusion, appropriation, and publication of private facts"). Plaintiff appears to allege only the first type of action. (See Compl. ¶¶ 73-74). Plaintiff alleges that CitiMortgage physically intruded upon Plaintiff's seclusion when its agent "entered onto the Plaintiff's property, entered her home, seized her home, left her home unsecure, converted her numerous personal belongings, and delayed offering any assistance to the Plaintiff upon obtaining notice of this wrongful conduct." (Compl. ¶ 73).

An intrusion upon seclusion claim requires satisfaction of three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." Swarthout v. Mutual Serv. Life Ins. Co., 632 N.W.2d 741, 744-45 (Minn. Ct. App. 2001). The Restatement (Second) of Torts § 625B cmt. b provides that "[t]he invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home."

Defendant CitiMortgage argues that this claim against it fails because Plaintiff was not present at the home at the time of the intrusion and the law requires that "a plaintiff must be

present for his or her physical seclusion to be intruded upon." (Mem. of Law in Supp. of Def.

CitiMortgage, Inc's Mot. to Dismiss at 12). However, Defendant does not cite any cases in

support of its position but merely the Restatement (Second) of Torts' comments and illustrations.

Such illustrations are, indeed, merely illustrations and do not definitively demonstrate that an

action for intrusion into seclusion may never lie when the person is absent and does not object at

the time of entry. See Ford Motor Co. v. Williams, 132 S.E.2d 206, 211-12 (Ga. Ct. App. 1963),

rev'd on other grounds by 134 S.E.2d 32 (Ga. 1963) (specifically addressing "whether there can

be an invasion of plaintiff's privacy by entering his home when no one was at home," and

finding a cause of action for intrusion of seclusion when the defendant's employees entered the

plaintiff's home to recover allegedly stolen property while the plaintiff was not at home and

urinated on his property); Gonzales v. Sw. Bell Tel. Co., 555 S.W.2d 219, 223 (Tx. App. 1977)

(rejecting the defendants argument that no cause of action existed for an invasion of privacy

resulting from an entry into a person's home when the person is not present).

Conversely, relying on Bauer, 149 F. Supp.2d at 1109, Plaintiff argues that "a viable

intrusion upon seclusion claim does not require the action to occur simultaneously with the

plaintiff being present." (Pl.'s Mem. in Opp'n to Def. CitiMortgage, Inc.'s Mot. to Dismiss at

20). However, Bauer established no such concrete rule and is itself easily distinguishable. In

Bauer, evaluating the "vaguely-defined tort," the Court emphasized that the defendants

continuously made phone calls and sent letters to the plaintiffs, their neighbors, their relatives,

and their employers in an attempt to collect a debt for someone that the defendants "received

multiple and highly reliable confirmations" was no longer living at the plaintiffs' address. 149 F.

Supp.2d at 1109-11. At the heart of the Court's analysis was the repeated and harassing nature

of defendants' conduct, which went beyond a reasonable "degree of persistence when the person

24

on the other end of the telephone denies responsibility for a debt." Id. at 1111.  No such facts

exist in this case.  Plaintiff does not allege that Defendant CitiMortgage or its alleged agents

made numerous attempts to enter Plaintiff's home; rather, Plaintiff alleges that they entered

Plaintiff's home on a single occasion when Plaintiff was not then present.  Upon Plaintiff's

attorney's request, CitiMortgage ordered "Safeguard to change the locks and give Mrs. Hays the

only key."  (Compl. ¶ 18).  Plaintiff does not allege that after the initial incident, Defendant

CitiMortgage or its alleged agents made any attempts to secure or take possession of Plaintiff's

home or that they continued to intrude into her private life or residence in any way.  As such,

Bauer is inapposite to the facts of the present case.

 In summary, the Court finds that neither party has presented any authority to support their

respective bright-line positions with respect to this "vaguely-defined" tort, and the Court refuses

to establish any such concrete rule with respect to whether a person must be present to state his

or her objection at the time of entry.  Rather, the Court finds, as other courts have found, that

whether a plaintiff states a claim for intrusion into seclusion depends on the particular context of

the conduct in each case.  See Bauer, 149 F. Supp.2d at 1110-11 ("[t]hese various recitations

confirm that the court must give special regard to the circumstances under which the alleged

intrusion occurred, and the expectations that a reasonable person would have under such

circumstances.").  In this case, the Court finds that the circumstances alleged in the Complaint do

not give rise to a claim for intrusion into seclusion.

 Plaintiff argues that she properly pled her intrusion upon seclusion claim because

CitiMortgage sent in its agents, contractors, and/or employees into Plaintiff's home, and they

seized her home and converted her personal belongings.  (Pl.'s Mem. in Opp'n to Def.

CitiMortgage, Inc.'s Mot. to Dismiss at 19).  She argues that the conduct was highly offensive

because she "maintained an unequivocal expectation of privacy in her home."  (Id.)  However, Plaintiff fails to allege that the Defendants searched her personal property in any way or engaged in any other "highly offensive" conduct in the home, beyond their mere entry.  Permitting a claim for intrusion into seclusion merely on a single alleged unauthorized entry, which was apparently effectuated under the belief that the entry was authorized by Minn. Stat. § 582.031, would effectively read out the second required element of the tort that the defendant's conduct be "highly offensive."  The Court is unwilling to do so on the basis of the insufficient facts alleged in the Complaint.

　　　"While what is highly offensive to a reasonable person suggests a standard upon which a jury would properly be instructed, there is a preliminary determination of offensiveness which must be made by the court in discerning the existence of a cause of action of intrusion."  Bauer, 149 F. Supp.2d at 1109 (quoting Miller v. Nat'l Bd. Co., 232 Cal. Rptr. 668, 678 (1986)); see also In re Northwest Airlines Privacy Litigation, No. 04-126 (PAM/JSM), 2004 WL 1278459, at *5 (D. Minn. Jun. 6, 2004) ("[t]he Court may properly preliminarily determine whether the alleged intrusion is sufficiently offensive to state a claim for intrusion upon seclusion.").  In considering the degree of intrusion, the Court takes into account "the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, . . . the expectations of those whose privacy is invaded," and the number and frequency of the intrusive contacts.  Bauer, 149 F. Supp.2d at 1109.  Taking these considerations into account in the present case, the Court finds that Defendants conduct, as alleged in the Complaint, does not satisfy the highly offensive standard necessary to state a claim for intrusion into seclusion.

The Court notes that despite the Plaintiff's prolonged absence from the home prior to the alleged conduct giving rise to this claim, she has not alleged any facts in her Complaint demonstrating that she informed Defendants of her continued occupation of the home prior to Defendants alleged entry.  Minn. Stat. § 582.031 provides a holder of a mortgage or a sheriff's certificate a limited right of entry to prevent waste of the realty, which Defendant CitiMortgage argues provided it authority to enter the home.  Without deciding definitively at the present time whether CitiMortgage was indeed authorized to enter the property pursuant to the statute, the Court notes that CitiMortgage's apparent intent to exercise its right pursuant to the statute, whether properly or improperly executed, in the absence of any other explicit allegation that Plaintiff had informed Defendants of her continued occupation of the home, fails to demonstrate in this case the necessary highly offensive conduct to state a claim for intrusion into seclusion.

Additionally, Plaintiff has failed to allege any improper motive or bad faith on Defendants' part such that they intended to harass or intimidate the Plaintiff.  Second, Plaintiff has not alleged any repeated or multiple attempts to enter the real property or harass the Plaintiff. Though the Plaintiff alleges that Defendants "delayed offering any assistance to the Plaintiff," Plaintiff herself admits that upon her attorney's request, CitiMortgage ordered "Safeguard to change the locks and give [Plaintiff] the only key."  Third, Plaintiff does not allege that while in the home, Defendants engaged in conduct that would amount to being highly offensive, such as searching through her intimate personal property, taking any of her personal information and disclosing it to the general public, or engaging in the intentional destruction or defacement of her property.  Thus, the Court finds that Defendants conduct in this case does not meet the threshold requirement of highly offensive conduct to state a claim for intrusion into seclusion.

Plaintiff's argument that Defendants' conduct was highly offensive because Plaintiff "maintained an unequivocal expectation of privacy in her home" is unpersuasive (Pl.'s Mem. in Opp'n to Def. CitiMortgage, Inc.'s Mot. to Dismiss at 19).  Although people certainly do enjoy a strong expectation of privacy in their home, not every unauthorized entrance onto another's property will support a claim for intrusion into seclusion.  See Wittwer v. Enbridge, Inc., 2007 WL 152533, at *4 (Minn. Ct. App. Jan. 23, 2007) (explaining that the plaintiff "was not attempting to conceal herself or conduct herself in a private manner" and holding that "although the debris from the blast 'invaded' [the plaintiff's] private property, it did not invade her seclusion"); Ford Motor Co., 132 S.E.2d at 211-12 ("[t]here may, of course, be instances when a trespass has been committed without giving rise to an action for invasion of privacy.").

For these reasons, the Court finds that Plaintiff has failed to state a claim for intrusion upon seclusion and this claim should be dismissed.


### III.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [Docket No. 11] be **GRANTED** as to Counts 5 (as to CitiMortgage), 7, and 9, and **DENIED** as to Counts 1, 3, and 6 (as to CitiMortgage) as more fully described above.


Dated: March 29, 2012                                  s/Leo I. Brisbois
                                                       LEO I. BRISBOIS
                                                       United States Magistrate Judge

### N O T I C E
Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 12, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for

each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.